UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-10228-DJC |
| | ) | |
| | ) | |
| EDWARD STONE | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I.   INTRODUCTION**

In the space of two weeks in June 2014, Edward Stone committed three bank robberies to support an active and devastating heroin addiction. His addiction is a legacy from his mother, whose own heroin use led to Edward and his two sisters being taken from their parents when he was just eight years old. In recognition of the harm he caused the tellers, patrons, and the bank, Edward Stone has reached a plea agreement that binds him from recommending anything less than six years in prison. Mr. Stone now makes that recommendation, based upon the facts of the offense, a personal history of deprivation, an overstated criminal history, and the continuing support of family and friends. Six years incarceration is a lengthy sentence, and anything longer would violate the principle of parsimony, that a sentence be "*minimally* sufficient to achieve the broad goals of sentencing." United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

**II.     Edward Stone's personal history is a blueprint for devastating addiction.**

The presence report explains fully how Edward Stone came to be a homeless heroin addict passing notes and making threats in banks. At eight years old he was separated from his parents because his mother was addicted to drugs and his father was an alcoholic. PSR ¶ 84. Removal of children is always the last resort, and young Edward's life prior to that point would have necessarily been one of chaos and deprivation. We know it included physical abuse by his father. Exhibit A. Edward Stone has two sisters, one younger and one older. They shared his trauma, although neither shared the same father. PSR ¶ 84.

The children were first taken to live with their maternal uncle John Broderick. Id. Mr. Broderick was a first-hand witness to the physical and emotional suffering of Edward and his sisters. He and his wife did their best to provide healing, but the children's difficulties were simply too much at that point. Mr. Broderick has written a letter of support for Mr. Stone, submitted as Exhibit A. He remains committed to Edward Stone's recovery and potential, and has expressed regret that he was not able to provide all that was missing from the lives of his nieces and nephew. He succinctly closes his letter by describing "the Eddie that lives underneath all that pain." Exhibit A.

After leaving the Brodericks, the three siblings were then separated from each other. Oldest sister Kimberly went to live with a grandmother, Edward back with his father, and youngest Mariah was adopted. Id. Perhaps both because she left the hardship behind at the youngest age and because she was taken in by a completely different family, Mariah is the only one who has escaped addiction and found some level of stability. Oldest sister Kimberly remains fully in the grip of addiction. PSR ¶ 89.

Edward Stone did not find stability upon his return to his father, who was often intoxicated and worked long hours. PSR ¶ 85. His father attempted to compensate through schools and activities, but these can never replace a parent's involvement. While his father was emotionally unstable due to alcoholism, his mother was completely absent for six years. Id.

When Edward's mother returned to his life when he was 14, it was to have him accompany her to court to remove warrants. Id. It was not long afterwards that he began using drugs himself, at age 15. He used drugs with his older sister. Id. Deprived of a mother for six years, the fifteen-year-old was ready to form a relationship with her in any way possible, and that included using drugs together. Id.  Approximately a year after returning to his life, his mother died of a heroin overdose in November 2003. Id.

During this period Edward Stone left his father's house. Id. He lived in foster homes, with his drug-abusing sister, and with friends. Id. With this background, and because of his drug use, he only finished the ninth grade. PSR ¶ 117. In 2006, at age 18, he began living with friend Jason Geddes. Mr. Geddes lived through a similarly traumatic background, and ultimately became a codefendant in Mr. Stone's prior federal case, a failed bank robbery attempt. See Dkt. 07-10394-GAO.

### III.     The instant offenses occurred during a relapse following the death of Edward Stone's father.

Edward Stone  made repeated attempts at sobriety throughout his life. These include admitting himself to the Cushing House at age 18. PSR ¶ 108. During this admission he was befriended by staff member Brendan Conlon. Mr. Conlon became Edward Stone's sponsor, and

remains committed to his recovery nearly 10 years later. Mr. Conlon, still employed at Cushing House, has submitted written a letter for the Court's consideration, submitted at Exhibit B. A letter has also been submitted by Danny Ryan, a long-time Massachusetts Trial Court Officer, and someone who has known Mr. Stone since he was young. Exhibit C.

Additional and repeated sobriety efforts, including inpatient, outpatient, and methadone treatment, are detailed in the presentence report at paragraphs 109-116. Despite the fact that he has not yet been able to overcome a 10-year addiction rooted in childhood trauma, Edward Stone continues to work on his recovery. He is seeing a mental health counselor regularly while in pre-trial detention. PSR ¶ 105. He also looks forward to participating in the Bureau of Prison's RDAP program during his period of incarceration. PSR ¶ 116.

Mr. Stone's most recent period of sobriety on the street was nearly three months, from January into March 2014. Even this brief period is remarkable, as it came on the heels of his father's death from alcohol related illness in December 2013. PSR ¶ 87. The death of a parent is always devastating, but in this case it was an even more difficult loss because it was sudden, and both father and son were still young, 51 and 25, respectively. Neither had been able to overcome their addiction during their lifetimes, and there is no longer an opportunity for them to heal together.

Mr. Stone struggled greatly with the sudden loss of his father. From January through March 2014, he was hospitalized five separate times for depression, suicidal ideations, and one suicide attempt. PSR ¶ 102, 103. During this period he made great efforts to deal with his suffering without drugs. He reunited and moved in with his Uncle John Broderick. He participated in inpatient treatment at Arbour Counseling. PSR ¶ 104. He even appeared on John

4

Broderick's ministry radio program, sharing his efforts at recovery with the audience. A recording of his appearance has been submitted as Exhibit D.

Ultimately, despite all these efforts, the lure of heroin to numb the pain became too much for Edward Stone. He was arrested for operating under the influence of a drug on March 24, 2014. PSR ¶ 68. An uttering charge followed in April. The instant offenses occurred in June.

Years ago bank robberies were the province of organized and violent criminals. Due to the present capabilities of surveillance cameras and bank policies to offer no resistance, bank robberies are now primarily the domain of drug addicts too desperate and impaired to consider the consequences for themselves and their victims. Edward Stone, fully aware of the presence of cameras, made no efforts to conceal his identity. When arrested, he gave a full confession. PSR ¶ 22-23. He discussed his addiction and a desire to go back to jail, apparently feeling hopeless as to any other path to sobriety.

That pull towards incarceration as an intervention has come to fruition, and Mr. Stone now recommends a 72 month sentence. His personal history and most recent relapse do not reduce the severity of his actions. Instead they are appropriate considerations for determining a "minimally sufficient" sentence. Rodriguez, supra.

IV. **A variance is warranted because the Defendant's criminal history category substantially over-represents the seriousness of his criminal history.**

The Sentencing Guidelines attribute 11 criminal history points to Edward Stone, placing him in Criminal History Category V. This over-represents his criminal history because eight points are derived from offenses that occurred during two short periods of active drug use, from July

5

through December 2013, and March through April 2014. See PSR ¶¶ 64-68. In four of these five offenses the initial disposition was probation, and for one it was a Guilty Filed. Those dispositions alone account for four criminal history points, despite the fact that none of them were deemed by any sentencing judge to warrant incarceration in the first instance. The addition of these four criminal history points to the three awarded for Mr. Stone's prior federal conviction, PSR ¶ 63, take him from Category II to Category IV.

Additional criminal history points were given to two of those offenses for sentences later imposed for probation violations. PSR ¶¶ 64, 68. Two more criminal history points were added because Mr. Stone was on probation at the time of the instant offense. PSR ¶ 70.

Importantly, the revocations imposed in Malden and Cambridge District Courts at PSR ¶¶ 64 and 68 occurred *as a result of the present offense*. His criminal history thus became more serious because of the instant offense by four criminal history points, taking him from Category IV (7 points) to Category V (11 points). The seriousness of the offense is more properly reflected in the offense level. In this case, Mr. Stone is exposed to a punishment feedback loop, where he was punished in the prior cases for the present one, and is now subjected to higher guidelines as a result of the increased punishment that was a result of this case. The instant offense thus has been counted against him both in his criminal history and offense level. Given the short time frame, nature, initial disposition, and double counting of these offenses, Criminal History Category IV is more reflective of the seriousness of his criminal history.

An offense level of 24 in Category IV yields a guidelines range of 77-96 months. But for the additional punishment imposed in the Cambridge and Malden District court cases because of the present offense, Mr. Stone would have been considered in Category IV, and the government

6

would likely have recommended the low end of the range as they do now. Mr. Stone recommends a sentence only 5 months below the low end of the most appropriate criminal history category. Of course, the guidelines are not entitled to any presumption of reasonableness in the sentencing court. <u>Nelson v. United States</u>, 555 U.S. 350, 252 (2009) (per curiam) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.") A sentence of 72 months is ultimately appropriate because it is "sufficient but not greater than necessary" according to all the statutory sentencing factors. 18 USC 3553.

**V.     The length of the recommended sentence, appropriate conditions of supervised release, and the Defendant's age at release all support a lower risk of recidivism**.

Mr. Stone's prior federal offense, a failed bank robbery, was committed at age 19. PSR ¶ 63. He received a sentence of 30 months, which was not long enough to allow him to participate in the Bureau of Prisons 500 hour RDAP program. <u>Id</u>. Mr. Stone now recommends a sentence more than twice as long as his longest prior incarceration. He intends to pursue treatment through RDAP, and the six-year sentence is expected to be long enough for him to do so. This would be a continuation of treatment he has been undergoing during pretrial detention. PSR ¶ 105.

Mr. Stone is facing a much longer sentence than previously. This will provide much greater punishment, a longer period of sobriety, and much superior drug treatment. He was 24 at his prior release. If granted, the defendant's recommended sentence would result in release this time in his 30s. This combination of punishment, treatment and maturity through aging will put him in a much better position to take advantage of resources available during supervised release, which the defense recommends be imposed for 36 months. Most importantly, drug and mental health

treatment should be required as conditions of supervised release, and Mr. Stone requests the Court recommend participation in the Probation Department's CARE program.

        Respectfully submitted,
        EDWARD STONE
        by his attorney

        */s/ Joshua Hanye*
        Joshua Hanye, BBO#661686
        FEDERAL PUBLIC DEFENDER OFFICE
        51 Sleeper Street, 5th Floor
        Boston, MA 02210
        617-223-8061
        Joshua_Hanye@fd.org

**Certificate of Service**

I, Joshua Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.

Date: June 3, 2015                                                  */s/ Joshua Hanye*
                                                                              Joshua Hanye